UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **CHRIS DAVIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 06 C 4638** |
| | ) | |
| **SCOTT J. BABISH, PAUL MORGAN, SANDRA L. HAWKINS, BRUCE C. FAULKNER, ANNA HILL, MELODY J. FORD, KENNETH R. BRILEY, ROGER E. WALKER, and UNKNOWN NUMBER OF UNNAMED EMPLOYEES OF THE ILLINOIS DEPARTMENT OF CORRECTIONS,** | ) ) ) ) ) ) ) ) ) | **Judge Virginia M. Kendall** **Magistrate Judge Denlow** **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

Plaintiff, CHRIS DAVIS, by and through his attorney, Irene K. Dymkar, and complaining against defendants, states as follows:

**NATURE OF CLAIM**

1.    This action arises under the United States Constitution and the laws of the United States, specifically the Civil Rights Act of 1871 [42 U.S.C. § 1983] and 28 U.S.C. §2201, to redress deprivations of the civil rights of plaintiff through acts and/or omissions of defendants committed under color of law.  Specifically here, defendants deprived plaintiff of his rights under the Fifth and Fourteenth Amendments to the United States Constitution.

2.    Additionally, plaintiff relies upon the Court's supplemental jurisdiction to assert the Illinois state claim of malicious prosecution and abuse of process.

**JURISDICTION AND VENUE**

3.  Jurisdiction is based upon 28 U.S.C. Sections §§1343, 1331, and 1367.

4.  Venue lies in the United States District Court, Northern District of Illinois, pursuant to 28 U.S.C. §1391, because all events or omissions giving rise to this claim occurred in this district.

**PARTIES**

5.  At all times herein mentioned, plaintiff was and is a citizen of the United States and resides within the jurisdiction of the court. He is an inmate of Stateville Correctional Center in Joliet, Illinois.

6.  At all times herein mentioned, defendants were employees of the Illinois Department of Corrections, and were acting under color of state law. They are being sued in their individual capacity.

7.  At all times herein mentioned, defendants held the following titles and positions:

> A. SCOTT J. BABISH (hereinafter BABISH), Correctional Officer, Stateville Correctional Center,
>
> B. PAUL MORGAN (hereinafter MORGAN), Correctional Officer, Stateville Correctional Center,
>
> C. SANDRA L. HAWKINS (hereinafter HAWKINS), Chief, Adjustment Committee, Stateville Correctional Center, subsequently Grievance Officer,
>
> D. BRUCE C. FAULKNER (hereinafter FAULKNER), Adjustment Committee Member, Stateville Correctional Center,
>
> E. ANNA HILL (hereinafter HILL), Grievance Officer,

  F. MELODY J. FORD (hereinafter FORD), Chief, Administrative Review Board,

  G. KENNETH R. BRILEY (hereinafter BRILEY), Chief Administrative Officer (Warden), Stateville Correctional Center,

  H. ROGER E. WALKER (hereinafter WALKER), Director, Illinois Department of Corrections.

## STATEMENT OF FACTS

8. On or about February 10, 2004, a fraudulent disciplinary report was maliciously filed against plaintiff alleging possession of dangerous contraband and unauthorized property. The report alleged that a screwdriver was found in a pipe chase in a wall of plaintiff's jail cell.

9. The disciplinary report was signed by defendant BABISH and lists defendant MORGAN as a witness.

10. It was physically impossible for the screwdriver to have come from inside plaintiff's cell.

11. The prison Adjustment Committee met on February 18, 2004, fraudulently and maliciously found that plaintiff was guilty of the charges. The report states: "C/O Morgan indicated that their [sic] was evidence observed in the cell that indicated the screwdriver had been pushed out of the cell into the pipe chase."

12. Defendant MORGAN never appeared before the Adjustment Committee and never made such a statement. The testimony was fabricated.

13. The Adjustment Committee report was signed by defendants HAWKINS and FAULKNER. Defendant BRILEY concurred in the decision.

3

14. Plaintiff filed at least three grievances (February 18, 2004, February 27, 2004, March 22, 2004) claiming that he was being framed and insisting that it was impossible for a screwdriver found inside the pipe chase to have come from inside his cell.

15. Plaintiff was denied the opportunity to present evidence of his innocence of the charges at a hearing of this matter.

16. On May 12, 2004, a Grievance Officer Report was issued by HILL, perfunctorily affirming the finding of guilt, ignoring plaintiff's pleas for the opportunity to present evidence that it was physically impossible for the screwdriver to have come from inside his cell.

17. Defendant BRILEY concurred in the Grievance Officer Report.

18. An Administrative Review Board hearing took place on June 24, 2004. A decision was rendered on August 24, 2004. The Board remanded the case to defendant BRILEY "to have an investigation conducted to determine whether or not it is possible for the screwdriver to fit through the grating." Defendant FORD signed the report. Defendant WALKER concurred in the decision.

19. On May 18, 2005, the Internal Affairs Office conducted an experiment and determined that it was impossible for the screwdriver to have come from inside plaintiff's cell. The Internal Affairs investigator took pictures.

20. On or about July 10, 2005, plaintiff spoke to MORGAN and determined that all statements attributed to him were false. MORGAN signed a statement saying that he had never been contacted by the prison administrators about the incident and

that the pipe chase was in a common area, and therefore accessible to workers who might have left the screwdriver in the pipe chase.

21. Plaintiff wrote to BRILEY, enclosing MORGAN's statement and asking him to intervene, all to no avail.

22. At some point, in approximately the summer of 2005, HAWKINS was promoted to Grievance Officer and thus was overseeing her own work.

23. At some point, in approximately the summer of 2005, the Adjustment Committee Report of February 18, 2004, was altered and changed to read: "Officer Morgan physically took the screwdriver and put it through the grating of the cell vent to show that the screwdriver does indeed fit through the grating."

24. The altered Adjustment Committee Report purports to be signed by HAWKINS and FAULKNER; however, the signatures do not match the signatures of the February 18, 2004, report and appeared to be forgeries.

25. MORGAN never physically took the screwdriver to perform the test through the grating. The statement in the altered Adjustment Committee Report was a falsehood.

26. Defendant BRILEY concurred in the false report.

27. Despite the fact that the Internal Affairs Office had determined that it was physically impossible for the screwdriver to have come from inside the cell and despite the fact that MORGAN had signed a statement that indicated that any statements or testimony attributed to him were a lie, the Administrative Review Board "finalized" their decision on August 25, 2005. The Board referred to the falsified and

altered Adjustment Committee Report and stated: "This office is reasonably certain you committed the offense and recommends the grievance be denied." The report was signed by defendant FORD.

28. On August 25, 2005, therefore, plaintiff had exhausted all his remedies. A fraud had been perpetrated and the administrative process did not correct the wrong that had been wrought upon plaintiff. The administrative process failed because of the dishonesty of defendants.

29. Only by extraordinary measures, outside of the administrative process, was plaintiff able to push for and obtain an Internal Affairs investigative report on September 26, 2005, which definitively stated that it was impossible for the screwdriver to have come from inside plaintiff's cell. Thereafter, on January 5, 2006, there was a recommendation from the Administrative Review Board that plaintiff's record be expunged. However, there was no expungement. Only after plaintiff wrote an additional letter was he told in a Return of Grievance letter dated March 2, 2006, that his record was expunged.

30. The expungement was therefore accomplished outside of the administrative process and was accomplished after plaintiff had already served his punishment for the charges that had wrongfully been brought against him.

31. The acts of the defendants were willful, wanton, malicious, oppressive, retaliatory, and done with reckless indifference to and/or callous disregard for plaintiff's rights and said acts justify the awarding of exemplary and punitive damages.

32. By reason of the acts and/or omissions of defendants, plaintiff was required to retain an attorney to institute, prosecute and render legal assistance to him in the within action, so that they might vindicate the loss and impairment of his rights. By reason thereof, plaintiff requests payment by defendants of a reasonable sum for attorneys' fees pursuant to 42 U.S.C. Section §1988, (the Equal Access to Justice Act), the Prisoner Litigation Reform Act, or any other provision of law.

**COUNT I**
**DENIAL OF DUE PROCESS**

33. Plaintiff hereby incorporates and realleges paragraphs 1 - 32, as though set forth herein in their entirety.

34. Defendants deprived plaintiff of fair proceedings as set forth in paragraphs 1 - 32 above by engaging in the multiple acts described in detail above, which include, but are not limited to, not disclosing known exculpatory evidence, submitting false charges as contained in the complaint, submitting false reports, conspiring to cover up falsehoods, concurring in and confirming false accusations, and otherwise acting in a fraudulent way to deny plaintiff a fair hearing.

35. These acts were directed toward plaintiff, were intentional and material, were perpetrated by fraud and malice, were motivated in part by a desire to retaliate, and therefore were in violation of plaintiff's due process rights.

36. Defendants' acts resulted in a perversion of the administrative process and plaintiff was denied relief through the administrative process.

37. By reason of the conduct of the individual defendants, plaintiff was deprived of rights, privileges and immunities secured to him by the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, defendants are liable to plaintiff pursuant to 42 U.S.C. §1983.

## COUNT II
## MALICIOUS PROSECUTION

38. Plaintiff hereby incorporates and realleges paragraphs 1 – 32, as though set forth herein in their entirety.

39. Defendants maliciously caused a disciplinary charge to be filed and prosecuted against plaintiff. There was no probable cause for the institution of a charge against plaintiff. The proceedings were commenced and continued maliciously.

40. The individual defendants facilitated this malicious prosecution by falsifying evidence, creating false reports, falsifying written charges, failing to investigate, and condoning and affirming false accusations, as set forth in more detail in paragraphs 1 - 32 above.

41. Plaintiff was wrongfully punished as a direct result of the prosecution of this disciplinary charge.

42. Plaintiff was injured emotionally and otherwise from the loss of certain liberty and related rights.

43. The charges were terminated in the plaintiff's favor on March 2, 2006.

44. Defendants are liable to plaintiff under Illinois law for the state supplemental claim of malicious prosecution.

## COUNT III
## ABUSE OF PROCESS

45. Plaintiff hereby incorporates and realleges paragraphs 1 – 32, as though set forth herein in their entirety.

46. Defendants engaged in the abuse of the prison disciplinary process. They used the legal process in a manner improper in the regular prosecution of the proceedings.

47. Defendants had an ulterior purpose or motive in abusing the legal process.

48. Defendants are liable to plaintiff under Illinois law for the state supplemental claim of abuse of process.

WHEREFORE, plaintiff, CHRIS DAVIS, by and through his attorney, Irene K. Dymkar, requests judgment as follows against the defendants on each and every claim:

1. That defendants be required to pay plaintiff general damages in a sum to be ascertained at a trial of this matter,

2. That defendants be required to pay plaintiff special damages,

3. That defendants be required to pay the plaintiff's' attorneys' fees,

4. That defendants be required to pay plaintiff exemplary and punitive damages in a sum to be ascertained at a trial of this matter,

5. That defendants be required to pay plaintiff costs of the suit herein incurred, and

      6.      That plaintiff be granted such other and further relief as this Court may deem just and proper

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

Dated: April 10, 2007                             /s Irene K. Dymkar
                                                                              Irene K. Dymkar

Irene K. Dymkar
Attorneys for Plaintiff
300 W. Adams Street, Suite 330
Chicago, IL 60606-5107
(312) 345-0123

**CERTIFICATE OF SERVICE**

      I, Irene K. Dymkar, an attorney, certify that on the 10th day of April, 2007, a copy of plaintiff's Amended Complaint was served upon the attorney for defendants named below electronically, through the court's electronic filing system:

                Matthew M. Smith
                Illinois Attorney General's Office
                100 W. Randolph Street, 13th floor
                Chicago, IL 60601

                                                          s/ Irene K. Dymkar
                                                          Irene K. Dymkar