IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS DAVIS, #N74262 | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06 C 4638 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| SCOTT J. BABISH, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Chris Davis ("Davis) brings this action against Defendants, Scott J. Babish ("Babish"), Paul Morgan ("Morgan"), Sandra L. Hawkins ("Hawkins"), Bruce C. Faulkner ("Faulkner"), Anna Hill ("Hill"), Melody J. Ford ("Ford"), Kenneth R. Briley ("Briley), and Roger E. Walker, Jr. ("Walker") pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his due process rights while acting under color of state law as officers of the Illinois Department of Corrections ("IDOC"). Relying on the Court's supplemental jurisdiction, Davis also asserts two state law claims for malicious prosecution and abuse of process arising out of the same set of facts. Defendants move to dismiss Davis's due process and retaliation claims.

For reasons stated herein, Defendants' Motion to Dismiss Davis's due process and retaliation claims is granted and the claims are dismissed with prejudice. Davis's pendent state law claims for malicious prosecution and abuse of process are dismissed with prejudice because the Court declines to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c).

1

# PLAINTIFF'S ALLEGATIONS

At the motion to dismiss stage, all of the plaintiff's allegations are accepted as true. Davis is an inmate at Stateville Correctional Center in Joliet, Illinois. On or about February 10, 2004, a disciplinary report was filed against Davis alleging his possession of dangerous contraband and unauthorized property in view of the fact that a screw driver was found in a pipe chase outside his jail cell. Pl.'s Am. Compl. ¶ 8. Babish signed the disciplinary report and Morgan was listed as a witness. *Id.* at ¶ 9.

On February 18, 2004, the prison Adjustment Committee found Davis guilty of the charges. *Id.* at ¶ 11. The report states: "C/O Morgan indicated that their [sic] was evidence observed in the cell that indicated the screwdriver had been pushed out of the cell into the pipe chase." *Id.* Morgan did not appear before the Adjustment Committee and did not make such a statement. *Id.* at ¶ 12. Hawkins and Faulkner signed the Adjustment Committee report and Briley concurred in the decision. *Id.* at ¶ 13. Subsequently, Davis filed at least three grievances claiming that he was being framed and insisting that it was impossible for the screwdriver to have come from inside his cell. *Id.* at ¶ 14.

On May 12, 2004, Hill issued a Grievance Officer Report affirming the finding of guilt and denying Davis the opportunity to present evidence to the contrary. *Id.* at ¶ 16. Briley concurred in the decision. *Id.* On August 24, 2004, the Administrative Review Board remanded the case to Briley "to have an investigation conducted to determine whether or not it is possible for the screwdriver to fit through the grating." *Id.* at ¶ 18. Ford signed the report and Walker concurred in the decision. *Id.*

On May 18, 2005, the Internal Affairs Office conducted an experiment and determined that it was impossible for the screwdriver to have come from the inside of the Davis's cell. *Id.* at ¶ 19. On or about July 10, 2005, Davis spoke to Morgan and determined that the statements attributed to him were false. *Id.* at ¶ 20. Morgan signed a statement stating that the prison administrators had never contacted him about the incident and admitting that workers might have left the screwdriver in the pipe chase. *Id.* Davis wrote to Briley, enclosing Morgan's statement and asking him to intervene. *Id.* at ¶ 21.

At some point during the summer of 2005, the Adjustment Committee report was altered to read: "Officer Morgan physically took the screwdriver and put it through the grating of the cell vent to show that the screwdriver does indeed fit through the grating." *Id.* at ¶ 23. Although Hawkins and Faulkner allegedly signed this report, the signatures do not appear to match their signatures on the February 18, 2004 report. *Id.* at ¶ 24. Briley concurred in the report. *Id.* at ¶ 26. The Administrative Review Board "finalized" its decision on August 25, 2005. *Id.* at ¶ 27. The Board concluded: "This office is reasonably certain [Davis] committed the offense and recommends the grievance be denied." *Id.*

On September 26, 2005, an Internal Affairs investigative report definitively stated that it was impossible for the screwdriver to have come from inside Davis's cell. *Id.* at ¶ 29. On January 5, 2006, the Administrative Review Board recommended that Davis's record be expunged. *Id.* Davis received a Return of Grievance letter, dated March 2, 2006, stating that his record had been expunged. *Id.*

3

**STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the Plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that he is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Specifically, such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

**DISCUSSION**

**Davis's Due Process Claim**

The Due Process Clause of the Fourteenth Amendment provides: "Nor shall any State deprive any person of life, liberty, or property, without due process of law." *Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005)(citing U.S. CONST. amend XIV, § 1). Accordingly, the procedural protections of the Due Process Clause will only be triggered if a state action implicates a constitutionally protected interest in life, liberty, or property. *Id*. (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570-71 (1972)). It follows then that Davis cannot under Section 1983 complain of procedural due process violations unless the state has first deprived him of a constitutionally protected interest. *Id*. (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)) ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, the second

examines whether the procedures attendant upon that deprivation were constitutionally sufficient.")(*Williams v. Ramos*, 71 F.3d 1246, 1248-49 (7th Cir. 1995)) ("When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in 'life, liberty, or property' without due process of law.")(citing *Zinermon v. Burch*, 494 U.S. 113, 125-26, (1990)).  Not every disciplinary act amounts to a contravention of a liberty interest. Today, a prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that impose an "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Lekas*, 405 F.3d at 608 (quoting *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)).  If the state action implicates a protected liberty interest then the prisoner must further show that the procedures he was afforded upon the deprivation of that interest were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007).

Here, Davis does not state the punishment he was given as a result of his disciplinary convictions and therefore has not pleaded the alleged deprivation that he suffered at the hands of the state.  Davis pleads that a fraudulent disciplinary report was maliciously filed against him alleging possession of dangerous contraband and unauthorized property and that he was found guilty of the charges.  Pl. Am. Comp. at ¶¶ 8, 11.  This Court may take judicial notice of matters of public record in deciding a motion to dismiss.  *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000); *see also Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994))(*Wilson v. Lee*, 2001 WL 1135900, *6 (N.D. Ill. 2001)). IDOC regulations provide that punishments for the violation of disciplinary rules for possessing dangerous contraband and unauthorized

5

property include loss or restriction of privileges, B or C Grade, good time revocation, and segregation. 20 Ill. Admin. Code 504 (Table A).[1] Demotion in status, loss of privileges, and revocation of good time credits for prisoners with life sentences[2] raise no due process concerns. *See Sandin*, 515 U.S. 472, 486; *Thomas v. Ramos*, 130 F.3d 754, 761-62 (7th Cir. 1997); *Cochran v. Buss*, 381 F.3d 637, 641 (7th Cir. 2004); *Hamilton v. O'Leary*, 976 F.2d 341, 344 (7th Cir. 1992); 730 ILCS 5/3-6-3 (2007)(good time credits can be a constitutionally protected liberty interest when they affect the length of a prisoner's confinement, unless the prisoner is serving a life sentence.) Since *Sandin*, the right to litigate disciplinary confinements has become "vanishingly small." *Wagner v. Hanks*, 128 F. 3d 1173, 1175 (7th Cir. 1997). The Seventh Circuit has repeatedly held that disciplinary segregation does not create an atypical and significant hardship triggering due process protection. *See Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1998); *Wagner*, 128 F.3d at 1176.[3] Rather, prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). For this reason, "[a] prisoner has no liberty interest in remaining in the general population." *William*, 71 F.3d at 1249.

---

[1] Davis's Response to Defendants' Motion to Dismiss the Complaint states that "Plaintiff's deprivation of liberty and good time credits was not "corrected in the administrative process..." Pl. Resp. at ¶ 3.

[2] This Court takes judicial notice of the Davis's two life sentences as reported in the Illinois Department of Corrections public website. See http://www.idoc.state.il.us/subsections/search/inms.asp.

[3] Davis did not plead that the conditions particular to his segregation were atypical, therefore his disciplinary segregation did not infringe a federally enforceable liberty interest. *See Sandin v. Conner*, 132 L. Ed. 2d 418, 115 S. Ct. 2293, 2298-2300 (1995); *Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995). Additionally, on at least three prior occasions, the Seventh Circuit has held that the conditions of disciplinary segregation at Stateville, where Davis is incarcerated, were not so atypical and significant as to constitute a deprivation of a liberty interest. *Lekas*, 405 F. 3d at 610 (citing *Williams v. Ramos*, 71 F>3d 1246 (7th Cir. 19950; *Thomas v. Ramos*, 130 F. 3d 754 (7th Cir. 1997).

Davis's brief appears to suggest that the denial of due process in his case was so severe that it alone is an atypical and significant deprivation in its own right and that the punishment stemming from the denial of due process was either secondary or irrelevant, but a prison's disciplinary actions require due process safeguards only when the *punishment* imposed affects the duration of the prisoner's sentence or inflicts an "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Sandin*, 515 U.S. at 484. Davis has failed to plead facts that, if taken as true, at least plausibly suggest that he was deprived of a federally protected liberty interest and Davis's claim could be dismissed for this reason alone.

Even if Davis had alleged a deprivation of a liberty interest, there was no denial of due process because the Administrative Review Board reversed the erroneous disciplinary action. *Morissette v. Peters*, 45 F. 3d 1119, 1122 (7th Cir. 1994) (citing *Harper v. Lee*, 938 F.2d 104, 105 (8th Cir. 1991)). The administrative appeal process is part of the due process afforded to prisoners. *Id*. (citing *Griffin-Bey v. Bowersox*, 978 F.2d 455, 456-57 (8th Cir. 1992)). Although Davis claims that he obtained expungement "outside of the administrative process," he has conceded that his record was expunged and that the Administrative Review Board recommended expungement. Pl. Am. Compl. ¶ 29. Even if this Court were to assume that Davis's record was expunged after he had already been punished, the *Sandin* Court upheld summary judgment on behalf of prison officials even though the prisoner had already served his sentence in disciplinary segregation before his disciplinary conviction was overturned and his disciplinary record expunged. *Sandin,* 515 U.S. at 486.

Therefore, even assuming Davis had properly pleaded a deprivation of a federally protected liberty interest, Davis has not pleaded facts that plausibly suggest that the procedures he was afforded upon the deprivation of that interest were constitutionally deficient. For the aforementioned reasons, Davis's due process claim is dismissed with prejudice.

### Davis's Retaliation Claim

Although it is not contained in a separate count, Davis argues in his response to Defendants' Motion to Dismiss that he has pled a retaliation claim. Pl.'s Resp., pp. 5-6. Retaliation and Denial of Due Process are separate claims which are analyzed differently. *Hoskins v. Lenear*, 395 F. 3d 372, 375 (7th Cir. 2005). Although Davis has not alleged a protected liberty interest, he may still allege retaliatory treatment under § 1983. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267, 275-76 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139, 1143 (7th Cir. 1988). Conduct that does not independently violate the Constitution can still form the basis for a retaliation claim if it is done with an improper, retaliatory motive. *Hoskins*, 395 F.3d at 375. A prisoner can sufficiently state a claim for relief when he alleges that prison official issued baseless disciplinary tickets against him in relation for pursuit of administrative grievances. *Lekas*, 405 F.3d 602, 614; citing *Black v. Lane*, 22 F. 3d 1395, 1402-03 (7th Cir. 1994). Unlike the plaintiffs in *Hoskins* and *Lekas*, Davis does not plead that the defendants issued the disciplinary ticket in retaliation for his pursuit of separate administrative grievances against them or other prison officials. *Id.*; *Lekas*, 405 F.3d at 614. Although Davis alleges that the defendants' acts were motivated in part by a "desire to retaliate," he fails to establish any

basis for such a conclusion. Pl.'s Am. Compl. ¶ 35. At a minimum, a claim for retaliation must set forth "a chronology of events from which retaliation may plausibly be inferred." *Zimmerman*, 226 F.3d at 573 (quoting *Cain*, 857 F.2d at 1143 n.6). Davis' complaint falls short in this regard, thus he has failed to state a claim for retaliation upon which relief can be granted, and therefore, Davis's retaliation claim is dismissed with prejudice.

This Court declines to exercise supplemental jurisdiction over Davis's pendent state law claims for malicious prosecution and abuse of process pursuant to 28 U.S.C. § 1367(c), and therefore, the state claims are dismissed with prejudice.

So ordered.

_____
Virginia M. Kendall, United States District Court Judge
Northern District of Illinois

Date: July 20, 2007